63 A.3d 40

**DEUTSCHE BANK NATIONAL TRUST COMPANY As Trustee for the Certificate Holders of ISAC 2006–5 MTG Pass–Through Certificates and Bank of America, N.A., as Successor by Merger to BAC Home Loans Servicing, LP**

v.

**Angela BROCK.**

**No. 55, Sept. Term 2012.**

Court of Appeals of Maryland.

March 22, 2013.

Gary C. Tepper, (Ballard Spahr LLP, Washington, D.C.; Robert A. Scott of Ballard Spahr LLP, Baltimore, MD), on brief, for Petitioner.

John Hautman, Sterling, VA, (John H. Harman, Rockville, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, McDONALD, JJ.

HARRELL, J.

This case arises out of a challenge by a borrower, Respondent Angela Brock ("Brock"), to the authority of various individuals and entities to effectuate a valid foreclosure on her residential property. After a foreclosure sale was scheduled in Montgomery County by the substitute foreclosure trustees, Edward S. Cohn, Stephen N. Goldberg, Richard E. Solomon, and Richard J. Rogers (referred to collectively as the "Substitute Trustees"), but before the sale took place, Brock filed a separate action in the Circuit Court for Montgomery County, seeking compensatory damages and declaratory and injunctive relief, against the Substitute Trustees, Deutsche Bank National Trust Company (as Trustee for the Certificate Holders of ISAC 2006–5 MTG Pass–Through Certificates) ("Deutsche Bank"), and BAC Home Loans Servicing LP ("BAC") (now known as Bank of America, N.A.), for alleged defects in the foreclosure process and the authority of the named Defendants to foreclose on her property. Deutsche Bank and BAC (referred to collectively as "Petitioners" [1]) filed a motion for summary judgment in Brock's action, which motion was granted by the Circuit Court, which concluded that no genuine dispute of material fact existed as to the Petitioners' authority to foreclose on the property and dismissed Brock's complaint in its entirety. The Court of Special Appeals reversed, in an unpublished opinion, finding, pursuant to this Court's decision in *Anderson v. Burson*, 424 Md. 232, 35 A.3d 452 (2011), that Petitioners did not prove they were persons entitled to enforce the promissory note, and thus genuine disputes of material fact existed precluding summary judgment. We are asked here to determine whether, based on the indorsements to the promissory note at issue, Petitioners are entitled to enforce

---

1. Although the Substitute Trustees were named parties to the action in the Circuit Court and the Court of Special Appeals, they did not file a petition for *certiorari* or a brief with this Court. Therefore, they are not parties to the appeal.

the Note. For the reasons explained below, we determine that BAC is entitled to enforce the Note. Therefore, we reverse the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

On 28 September 2006, Brock executed a promissory note in the principal amount of $544,000 to her lender, Amerifund Mortgage Services, LLC ("Amerifund Mortgage"), for the purpose of financing the purchase of improved residential real property located in Silver Spring, Maryland. The promissory note (the "Note") was secured by a deed of trust, signed by Brock that same day, in favor of Amerifund Mortgage.[2]

Although the loan originated with Amerifund Mortgage, it was sold and securitized thereafter. As we explained in *Anderson v. Burson,*

[s]ecuritization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. The investment bank bundles together the multitude of mortgages it purchased into a "special purpose vehicle," usually in the form of a trust, and sells the income rights to other investors. A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors.

424 Md. at 237, 35 A.3d at 455 (internal citations and footnote omitted). A special purpose vehicle "is a business entity that is exclusively a repository for the loans; it does not have any employees, offices, or assets other than the loans it purchases." *Id.* at 237 n. 7, 35 A.3d at 455 n. 7 (quoting Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System,* 78 U. Cin. L.Rev. 1359, 1367 (2010)).

---

2. A copy of the deed of trust is not included in the record.

█ Here, although the Note originated with Amerifund Mortgage, it appears that it was sold later. The allonge[3] attached to the Note contains the following three indorsements:

PAY TO THE ORDER OF:

American Brokers Conduit

WITHOUT RECOURSE,

Amerifund Mortgage Services, LLC

PAY TO THE ORDER OF:

IMPAC FUNDING CORPORATION WITHOUT RECOURSE:

American Brokers Conduit

PAY TO THE ORDER OF

WITHOUT RECOURSE

IMPAC FUNDING CORPORATION

The allonge does not indicate on what date each indorsement was made.[4] Although not reflected in the Note's indorsements, Petitioners contend that ownership of the Note was assigned ultimately to a trust,[5] the beneficiaries of which are

---

**3.** An allonge is generally a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Anderson*, 424 Md. at 240 n. 10, 35 A.3d at 457 n. 10 (quoting Black's Law Dictionary 88 (9th ed.2004)). Pursuant to Maryland Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–204(a), an allonge is considered to be a part of the Note.

**4.** Although Brock, in oral argument before us, expressed doubt regarding the validity of the indorsements on the Note, the authenticity of the indorsements was not an issue raised in or considered by the Court of Special Appeals. Thus, because the question of the validity of the indorsements contained on the allonge are not before this Court, we assume, without deciding, that the indorsements are valid.

**5.** The record does not indicate definitively the chronological trail of the loan—specifically, when or to whom Amerifund Mortgage sold the loan, or when or what entity securitized the loan into the Trust. According to an affidavit by Lindsay Weiss, a litigation specialist for BAC, the Trust was formed "through the transfer of various mortgage loans to the Trust by IMPAC," which included the Brock loan. Although Petitioners contend that the Trust owns the Note, Brock argues that the

the Certificate Holders of ISAC 2006–5 MTG Pass–Through Certificates. According to a Pooling and Servicing Agreement for the 2006–5 MTG Pass–Through Trust (the "Trust"), Deutsche Bank National Trust Company is the Trustee, and IMPAC Funding Corporation ("IMPAC") is denominated the Master Servicer. IMPAC entered into a Sub–Servicing Agreement with BAC,[6] pursuant to Section 3.02 of the Pooling and Servicing Agreement, to be the sub-servicer for the loan. Under the Pooling and Servicing Agreement, therefore, both BAC and IMPAC have the power of attorney from Deutsche Bank, as Trustee, to fulfill their duties—including, but not limited to, instituting legal proceedings and appointing attorneys for the purpose of effectuating foreclosure.[7]

---

true ownership of the Note is an open question precluding, on this record, Petitioners' enforcement of the Note.

6. Bank of America, N.A. is the successor by merger to BAC Home Loans Servicing, which was known formerly as Countrywide Home Loans Servicing LP.

7. Specifically, the Pooling and Servicing agreement provides, in relevant part:

The Master Servicer may perform its responsibilities relating to servicing through other agents or independent contractors, but shall not thereby be released from any of its responsibilities as hereinafter set forth. The authority of the Master Servicer, in its capacity as master servicer, and any Sub–Servicer acting on its behalf, shall include, without limitation, the power to (i) consult with and advise any Sub–Servicer regarding administration of a related Mortgage Loan; (ii) approve any recommendation by a Sub–Servicer to foreclose on a related Mortgage Loan; (iii) supervise the filing and collection of insurance claims and take or cause to be taken such actions on behalf of the insured Person thereunder as shall be reasonably necessary to prevent the denial of coverage thereunder; and (iv) effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing a related Mortgage Loan, including the employment of attorneys, the institution of legal proceedings, the collection of deficiency judgments, the acceptance of compromise proposals, the filing of claims under any Insurance Policy and any other matter pertaining to the delinquent mortgage loan.

Subject to Section 3.16, the Trustee shall execute, at the written request of the Master Servicer, and furnish to the Master Servicer and any Sub–Servicer such documents as are necessary or appropriate to enable the Master Servicer or any Sub–Servicer to carry out their servicing and administrative duties hereunder, and the Trustee

Due to personal financial difficulties, Brock fell behind on her loan payments. After she became delinquent, BAC appointed, in 2009, substitute trustees to initiate foreclosure proceedings.[8] The Substitute Trustees filed an Order to Docket Foreclosure of Residential Property, pursuant to Maryland Rule 14–207, in the Circuit Court for Montgomery County, thus commencing a foreclosure proceeding against Brock and her property. The record in this case does not indicate when the Order to Docket was filed, but a foreclosure sale was scheduled for 24 February 2010.

On 16 February 2010, Brock filed a Complaint for Injunctive Relief, Breach of Fiduciary Duty, and Fraud in a separate action in the Circuit Court for Montgomery County, naming as defendants Deutsche Bank, BAC, and the Substitute Trustees (referred to collectively as "Defendants"). Brock contended that: (1) Deutsche Bank and BAC lacked authority to appoint the Substitute Trustees; (2) the Substitute Trustees breached their fiduciary duty to Brock by attempting allegedly to foreclose unlawfully on the property and failing to investigate the authority of Deutsche Bank and BAC to initiate foreclosure; and, (3) Deutsche Bank defrauded Brock by attempting to foreclose on the property. Brock sought: (a) a permanent injunction preventing the Defendants from selling or foreclosing on the property under the deed of trust; (b) a declaration that Deutsche Bank is neither the beneficiary nor the lender under the deed of trust and thus is not empowered to enforce it or appoint substitute trustees;[9] (c) compensatory and puni-

---

hereby grants to the Master Servicer a power of attorney to carry out such duties.

**8.** According to Brock, BAC executed a Deed of Appointment of Substitute Trustees, dated on or about 3 December 2009, which is not included in the record. The Deed of Appointment was signed allegedly by Darlene Buzzard as "Attorney in Fact" on behalf of BAC, acting as "Servicing Agent" for Deutsche Bank. BAC does not dispute that it appointed the Substitute Trustees.

**9.** Brock contended that because the deed of trust listed Amerifund Mortgage as the lender and stated that only the lender has the authority

tive damages; and, (d) attorneys fees and costs. Brock filed additionally, on 18 February 2010, a motion for a temporary restraining order seeking to enjoin the Substitute Trustees from proceeding with the foreclosure sale until the court decided Brock's claims. In response, the Substitute Trustees cancelled voluntarily the foreclosure sale, pending the outcome of Brock's suit. In light of the Substitute Trustees' action, the trial court denied the motion for a temporary restraining order.

On 16 September 2010, Petitioners filed a motion for summary judgment, contending principally that, because indisputably BAC has physical possession of the Note, indorsed in blank, it is entitled to enforce it, regardless of who owns the Note. In support of its contentions, Petitioners attached portions of the Pooling and Servicing Agreement, as well as an affidavit from Ron Morrison, Executive Vice President of IMPAC, stating that the Trust is the owner, IMPAC the Master Servicer, and BAC the sub-servicer of the Note. Additionally, Petitioners provided an affidavit from Lindsay Weiss, a litigation specialist at BAC, stating that according to BAC's records, although the Trust is the owner of the Note, BAC is in physical possession of the Note. Both affidavits stated that, pursuant to the Pooling and Servicing Agreement, BAC has a Power of Attorney from Deutsche Bank to do "all things that are necessary to foreclose and sell the Property per the Deed of Trust."

Brock filed on 4 October 2010 an Amended Complaint for Injunctive Relief, Negligence,[10] and Declaratory Judgment, claiming that, because the Trust made its last filing with the Securities and Exchange Commission ("SEC") in 2007 and terminated its SEC registration, the Trust exists no longer. Alternatively, Brock claimed, as she had in her original com-

to invoke the power of sale, Deutsche Bank did not have the power of the lender and could not foreclose under the deed of trust.

10. Brock's negligence claim in her First Amended Complaint was in essence the same as the breach of fiduciary duty claim she asserted against the Substitute Trustees in her original Complaint.

plaint, that the Trust does not own the Note and thus had no authority to appoint the Substitute Trustees or invoke the power of sale under the deed of trust. Brock sought a declaration that the deed of trust was "null and void," and an order requiring "such Deed of Trust and all related filings to be removed from the land records of Montgomery County." The same day, Brock filed a memorandum opposing Petitioners' summary judgment motion, arguing that genuine material facts existed as to the existence of the Trust and the ownership of the Note, and that Petitioners were required to support their motion for summary judgment with "the best evidence available to them," referring to the actual assignment documents. In support of her contention that the Trust existed no longer, Brock produced her personal affidavit, stating that, as a result of the Trust's Notice of Suspension of Duty to File Reports with the SEC in 2007, "[t]he inference to be drawn from this delisting action so soon after the Trust registered in December 2006 is that the Trust ceased to exist or perhaps never even was in existence." Further, she argued that only the lender may authorize foreclosure, and that "there is nothing in the Deed of Trust or in the Maryland Code which permits a mere holder of a note secured by a deed of trust to institute foreclosure proceedings under a deed of trust where the holder can not also establish it is the owner of the note and beneficiary of the deed of trust."

On 3 November 2010, Petitioners filed a second motion for summary judgment, arguing that the contentions raised in Brock's opposition memorandum were without merit, and that, because BAC is the sub-servicer and the holder of the Note, it was entitled to and could proceed properly with a foreclosure action. In support, Petitioners provided a second affidavit by Ron Morrison of IMPAC, stating: "The Trust is still in existence today. Securities and Exchange Commission Rules provide that the Trust is not required to continue to file reports after a certain time period runs. The transaction is no longer public so further filings are not required. That is the only reason the Trust no longer files SEC reports."

At a hearing on 1 December 2010,[11] a Circuit Court judge granted Petitioners' motion for summary judgment and dismissed the complaint, with prejudice, finding that there was no material fact in dispute that would prohibit the foreclosure from proceeding, and that the Defendants had established that they were the appropriate entity entitled to proceed. The order dismissing the complaint was entered on 6 December 2010. Brock noted timely an appeal to the Court of Special Appeals.

Before the intermediate appellate court, Brock argued that the Circuit Court erred in granting summary judgment because a genuine dispute of material fact had been raised as to the following: (1) the legal existence of the Trust; (2) the authority of Deutsche Bank to appoint the Substitute Trustees; (3) the ownership of the Note; (4) the adequacy of the pre-foreclosure notice; (5) the duty of care owed by the Substitute Trustees; and, (6) the authority of specific entities to release the Deed of Trust.[12] In an unreported opinion, the Court of Special Appeals reversed the Circuit Court's judgment granting Petitioners' motion for summary judgment. In so holding, the court considered primarily Brock's contentions regarding the existence of the Trust and the ownership of the Note.[13] Noting that Petitioners bore the burden of establishing

---

11. The Substitute Trustees filed a motion to dismiss the amended complaint on 18 November 2010, contending that, as a matter of law, it failed to state a claim upon which relief could be granted. At the hearing on December 1, the trial judge stated that he was not considering the Substitute Trustees' motion, but rather limited his decision to the motion for summary judgment offered by Petitioners.

12. Although the Court of Special Appeals discussed in its opinion Brock's contentions regarding the pre-foreclosure notice, duty of care, and authority to release the Deed of Trust, these issues were beyond the scope of Petitioners' motion for summary judgment. This is so because they were not included in either of Petitioners' motions for summary judgment, Brock's response, or decided or relied on by the Circuit Court judge at the summary judgment hearing.

13. The Court of Special Appeals determined that Brock's contention that Deutsche Bank lacked the authority to appoint the Substitute Trustees was not preserved for appellate review because Brock con-

the Trust's continued existence in their second motion for summary judgment, the court determined that a genuine dispute of material fact existed with respect to the continued existence of the Trust. Specifically, because the Trust was a separate entity from IMPAC and the affidavit offered in support of the Trust's continued existence was signed by an IMPAC employee, Morrison, the court determined that "the affidavit is devoid of an explanation" regarding Morrison's personal knowledge of the Trust's continued existence. Thus, the court held that a genuinely disputed material fact existed with regard to the Trust's existence.

Additionally, the court examined the admissible facts offered by Petitioners to determine if there was generated a genuine dispute of material fact regarding the ownership of the Note. The court concluded that, because the affiants did not provide an adequate basis for their asserted personal knowledge, the two affidavits offered by Petitioners were insufficient to establish that the Trust owned the Note (citing *The Great Atlantic & Pacific Tea Co. v. Imbraguglio*, 346 Md. 573, 598, 697 A.2d 885, 897 (1997); *Ehrlich v. Bd. of Educ. of Balt. County*, 257 Md. 542, 546, 263 A.2d 853, 855 (1970)). Thus, the intermediate appellate court looked solely to the Note and allonge to determine ownership. In examining the Note, the court observed that, although Petitioners argued that the Note belonged to the Trust, the allonge did not reflect a transfer to the Trust. Thus, the court concluded that "the allonge demonstrates that there was a dispute of fact as to the owner of the Note."

The court went further, stating that, "[e]ven assuming there was no dispute [of material fact regarding ownership], a review of the enforcement rights demonstrate[s] that summary judgment should not have been granted." Describing the chronology of the life of the Note, the court stated that the

ceded before the trial court that it was BAC, and not Deutsche Bank, that possessed the Note and appointed the Substitute Trustees. Without deciding the merits of the three remaining issues raised on appeal by Brock, the court noted that, as a consequence of its reversal of the decision below on other grounds, the issues were preserved for trial.

original holder was Amerifund Mortgage. After subsequent negotiation and transfer, American Brokers Conduit, and later IMPAC, became holders of the Note. The court did not consider explicitly the last indorsement on the Note, made by IMPAC.

Noting the parties' agreement that BAC possessed the Note, the Court of Special Appeals characterized BAC as a "nonholder in possession of the Note," which permitted BAC to "enforce the Note [pursuant to § 3–301(ii) of the Commercial Law Article] as long as it had 'the rights of a holder, i.e., a transferee in possession or nonholder in possession.' " (quoting *Anderson,* 424 Md. at 248, 35 A.3d at 462). Because the court characterized BAC as a nonholder in possession, it noted that BAC did not "enjoy the statutorily provided assumption of the right to enforce the instrument that accompanies a negotiated instrument." (quoting *Anderson,* 424 Md. at 249, 35 A.3d at 462). Thus, the court concluded that BAC was required to provide evidence demonstrating how BAC obtained the Note, but did not do so on the record before the court. As a result, the court determined that "Deutsche Bank and BAC failed to establish that BAC had the authority to appoint the Substitute Trustees."

Petitioners filed a motion for reconsideration with the Court of Special Appeals, which was denied on 5 June 2012. We issued, on Petitioners' petition, a writ of *certiorari,* 427 Md. 606, 50 A.3d 605 (2012), to consider the following question:

Whether an entity in possession of a promissory note indorsed in blank—the most common type of indorsement for thousands of notes owned by mortgage-backed security trusts—is not a holder and is merely a non-holder in possession, in conflict with Title 3 of the Maryland UCC and a misinterpretation of this Court's decision in *Anderson v. Burson,* 424 Md. 232, 35 A.3d 452 (2012)?

## STANDARD OF REVIEW

On review of an order granting or denying summary judgment, we must first determine whether a genuine dispute

of material fact was made manifest on the record before the trial court. *D'Aoust v. Diamond,* 424 Md. 549, 574, 36 A.3d 941, 955 (2012) (quoting *Appiah v. Hall,* 416 Md. 533, 546, 7 A.3d 536, 544 (2010)). The mere presence of a factual dispute, however, will not generally render inappropriate summary judgment. *O'Connor v. Balt. Cnty.,* 382 Md. 102, 111, 854 A.2d 1191, 1196 (2004) (citing *Beatty v. Trailmaster,* 330 Md. 726, 738, 625 A.2d 1005, 1011 (1993)). Rather, the crux of the inquiry is whether the disputed fact is material, or, "a fact the resolution of which will somehow affect the outcome of the case." *Lippert v. Jung,* 366 Md. 221, 227, 783 A.2d 206, 209 (2001) (quoting *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608, 614 (1985)). "If no genuine dispute of material fact exists, this Court determines 'whether the Circuit Court correctly entered summary judgment as a matter of law,'" *Whitley v. Md. State Bd. of Elections,* 429 Md. 132, 148, 55 A.3d 37, 47 (2012) (quoting *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.,* 404 Md. 560, 571, 948 A.2d 11, 18 (2008)), without deference to the lower courts' assessment of the law. *Rhoads v. Sommer,* 401 Md. 131, 148, 931 A.2d 508, 517–18 (2007).

## DISCUSSION

Petitioners argue that, in determining that a genuine issue of material fact existed as to the ownership of the Note and the existence of the Trust, the Court of Special Appeals erred in failing to recognize that the last indorsement of the Note (by IMPAC) was an indorsement in blank. Thus, Petitioners argue, because BAC was in possession of the Note, indorsed in blank, BAC was the holder of the Note pursuant to § 3–205 of the Commercial Law Article and was, therefore, entitled to enforce it. *See* Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–301. Because the Commercial Law Article gives BAC the right to enforce the Note, Petitioners contend, in essence, that any issues of fact regarding the existence of the Trust and the ownership of the Note are not material and may not defeat their motion for summary judgment. Brock does not appear to contradict Petitioners' asser-

tion that BAC is the holder of the Note, but rather counters that the alleged factual disputes are indeed material. Specifically, she argues that summary judgment is inappropriate because (1) if the Trust does not exist, the Deed of Appointment was executed on behalf of a non-existent legal entity and thus is insufficient to grant the Substitute Trustees the authority to seek foreclosure; and (2) it is Deutsche Bank, as Trustee, and not BAC, which is seeking to foreclose on the property; thus it is Deutsche Bank's, and not BAC's, status as a holder, or a non-holder, of the Note that is relevant.[14]

A deed of trust securing a negotiable promissory note "cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust." *Anderson,* 424 Md. at 246, 35 A.3d at 460 (citing *Le Brun v. Prosise,* 197 Md. 466, 474, 79 A.2d 543, 548 (1951)). Thus, once the note is transferred, "the right to enforce the deed of trust follow[s]." *Svrcek v. Rosenberg,* 203 Md.App. 705, 727, 40 A.3d 494, 507 (2012); Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 9–203(g) & cmt. 9 (codifying "the common-law rule that a transfer of an obligation secured by a security interest or other lien on ... real property also transfers the security interest or lien"). As a result, because a negotiable promissory note secured by a deed of trust is governed by the Commercial Law Article of the Maryland Code, so too is the resolution of the parties' dispute in the present case. *Shepherd v. Burson,* 427 Md. 541, 551, 50 A.3d 567, 573 (2012); *Anderson,* 424 Md. at 246, 35 A.3d at 460. We determine that, contrary to the panel of the Court of Special Appeals, BAC is a holder of the Note and that, therefore, the remaining disputes of fact are not material to the resolution of this case.

---

**14.** Brock argues also that the intermediate appellate court ruled correctly that: (1) there was a material fact in dispute as to whether the Substitute Trustees were negligent; and, (2) there was a material fact in dispute as to whether a declaratory judgment should be issued to quiet title. These issues are not before this Court properly, as they were not considered expressly or raised by the parties in the summary judgment hearing, nor raised in Petitioners' petition for writ of *certiorari.*

The Commercial Law Article provides that the person or entity obligated on a promissory note [15] must pay the obligation to, in relevant part, "a person entitled to enforce the instrument." Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–412; *see also In re Veal,* 450 B.R. at 910 (noting that "the person obligated on the note ... must pay the obligation represented by the note to the 'person entitled to enforce' it"). If the maker of a note—in this case, Brock—pays a person entitled to enforce that promissory note, the maker's obligations under the note are discharged to the extent of the payment. Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–602(a). Thus, any payment that Brock made to a person or entity entitled to enforce the Note—and thus any action taken to foreclose on the collateral secured by the Deed of Trust—is sufficient, to the extent paid, to discharge Brock's liability on the Note.

Pursuant to the Commercial Law Article, a promissory note may be enforced by:

(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3–309 or § 3–418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

*Id.* at § 3–301. In this context, a "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* at § 1–201(b)(21)(i). A promise or order is payable to bearer if it states that: (a) it is payable to bearer or to cash; (b) indicates that an individual or entity in possession of the promise or order is entitled to payment; (c) does not state a payee; or, (d) otherwise indicates that it is not payable to an identified person. *Id.* at § 3–109(a). Thus, the person in

---

**15.** The person or entity obligated on a promissory note is referred to generally as the "maker" of the note. *See* Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–103(a)(5).

possession of a note, either specially indorsed to that person or indorsed in blank,[16] is a holder entitled generally to enforce that note.[17]

Brock contends that, regardless of which entity is the holder of the Note, only the owner may enforce the Note and bring an action to foreclose. The Commercial Law Article makes clear, however, the distinction between a holder and an owner. As the Comment to § 3–203 states, "[t]he right to enforce an instrument and ownership of the instrument are two different concepts." The holder of a note is "entitled to enforce the instrument even [if it is] not the owner of the instrument or is in wrongful possession of the instrument." *Id.* at § 3–301. *See also In re Veal,* 450 B.R. 897, 909 (9th Cir. BAP 2011) ("Article 3 does not necessarily equate the proper person to be paid with the person who owns the negotiable instrument."); *SMS Financial, LLC v. ABCO Homes, Inc.,* 167 F.3d 235, 238–39 (5th Cir.1999) (noting that a party's status as a holder and its attendant right to enforce an instrument is separate from the party's status as the owner of that instrument); *In re Walker,* 466 B.R. 271, 280 (Bankr.E.D.Pa.2012) ("[T]he borrower's obligation is to pay the person entitled to enforce the note (who need not be the 'owner' of the note)."); *In re*

---

**16.** Pursuant to Commercial Law Article, § 3–205,

(a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement". When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. . . .

(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement". When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

**17.** We discussed recently in *Anderson v. Burson* the enforcement rights accompanying a negotiation or transfer of a negotiable instrument. *See* 424 Md. at 246–47, 35 A.3d at 461. Here, however, the parties do not dispute the validity of the indorsements on the Note, nor argue that the indorsements were insufficient to negotiate the Note to the last specially indorsed holder on the allonge, IMPAC. Thus, we assume that IMPAC was a holder of the Note at the time the final indorsement in blank was made.

*Simmerman,* 463 B.R. 47, 60 (Bankr.S.D.Ohio 2011) (noting that "the holder of the note may differ from the owner of the note"). As the court noted in *In re Veal,* "[u]nder established rules, the maker [of a note] should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." 450 B.R. at 912. Here, Brock does not contend that she does not know to which entity her payments are due, and thus, the question of which entity owns the Note is irrelevant to the resolution of the present case.

The Court of Special Appeals determined that IMPAC, as the last named entity on the allonge, and not BAC, was the holder of the Note. Apparently because the Note was not indorsed specially to BAC, the intermediate appellate court instead characterized BAC as a nonholder in possession, thus permitted to enforce the Note only so long as it possessed the rights of a holder and required to "account for possession of the unindorsed instrument by proving the transaction through which [it] acquired it." (quoting *Anderson,* 424 Md. at 249, 35 A.3d at 462). Because the record does not demonstrate how BAC obtained the Note, however, the Court of Special Appeals determined that BAC did not have the right to enforce it.

Petitioners contend that the Court of Special Appeals misconstrued the requirement in *Anderson* that a party seeking to enforce an unindorsed instrument must prove its transfer history by applying it to the present case. Specifically, Petitioners contend that, in reaching its conclusion that BAC was merely a transferee in possession of the Note and requiring BAC to prove the Note's transfer history, as in *Anderson,* the intermediate appellate court ignored the last indorsement on the Note, which read:

PAY TO THE ORDER OF:

WITHOUT RECOURSE

IMPAC FUNDING CORPORATION

Because the instrument was indorsed in blank by IMPAC (which the Court of Special Appeals characterized as a holder

of the Note), Petitioners argue that the Note could be transferred by possession alone. *See* Md.Code (1975, 2002 Repl. Vol.), Com. Law Art., § 3–205(b). Thus, because there is no dispute that BAC is in possession of the Note, Petitioners argue, BAC is therefore a holder of the Note and entitled to enforce it, free of any requirement to prove how it came into possession of the Note.

We agree that the Court of Special Appeals's recourse to *Anderson* in this context is unhelpful. In *Anderson,* we considered the enforcement rights of a reputed transferee in possession (also Deutsche Bank) of an unindorsed note. Notably, we determined in *Anderson* that, due to the lack of indorsement on the note assigning the note to Deutsche Bank, Deutsche Bank was not a holder of the note, and had not received it by negotiation. 424 Md. at 247–48, 35 A.3d at 461–62. We noted that "[a] nonholder in possession ... cannot rely on possession of the instrument alone as a basis to enforce it." *Id.* at 248–49, 35 A.3d at 462. Rather, because "[t]he transferee's right to enforce the instrument derives from the transferor (because by the terms of the instrument, it is not payable to the transferee)," those rights must be proved. *Id.* We stated, "The transferee does not enjoy the statutorily provided assumption of the right to enforce the instrument that accompanies a negotiated instrument, and so the transferee 'must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it.'" *Id.* at 249, 35 A.3d at 462 (quoting Md.Code, Com. Law Art., § 3–203 cmt. 2).

In stark contrast to *Anderson,* however, the present case involves a Note that contains all necessary indorsements. There is no gap in the indorsements purporting to transfer the Note and, indeed, Brock does not argue in this Court that the indorsements were insufficient to negotiate the Note to BAC. BAC is in possession of the Note that is indorsed in blank. BAC is therefore the holder of the Note, and, as the holder, is a person or entity entitled to enforce it. *See* Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–301. Thus, whether the

Trust is (or is not) the owner of the Note is irrelevant for present purposes.

Brock maintains that the existence of the Trust is a material fact because the Deed of Appointment of the Substitute Trustees was executed by BAC as "attorney in fact" on behalf of the Trust. Brock argues that, if the Trust is nonexistent, the Deed of Appointment is ineffective, and the Substitute Trustees and BAC do not have authority to foreclose, because "BAC can not act as agent for an entity which does not legally exist." As Petitioners note, however, whether BAC signed the Deed of Appointment on its own authority or as agent on behalf of the Trust "is a distinction without a difference." In either capacity, BAC has the authority to appoint the Substitute Trustees and is bound by the Deed of Appointment. Thus, even if there is a dispute of fact over the Trust's continued existence, it is not material to the outcome of this case. Accordingly, we reverse.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**