REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1020

September Term, 2014

_____

OLD REPUBLIC INSURANCE
COMPANY

v.

NANCY GORDON

_____

Graeff,
Kehoe,
Nazarian,

JJ.

_____

Opinion by Graeff, J.
Dissenting Opinion by Nazarian, J.

_____

Filed: April 27, 2016

In *Finch v. LVNV Funding LLC*, 212 Md. App. 748, *cert. denied*, 435 Md. 266 (2013), this Court held that judgments obtained by collections agencies that do not have a license are void. In this case, we must determine whether Old Republic Insurance Company ("Old Republic"), appellant, is a collection agency pursuant to Md. Code (2010 Repl. Vol.) § 7-101(c) of the Business Regulation Article ("BR"), part of the Maryland Collection Agency Licensing Act ("MCALA"), and therefore, was required to be licensed as a collection agency to pursue this action against Nancy Gordon, appellee.

Old Republic is an insurance company that offers, among other things, credit insurance.[1] In December 2006, Old Republic issued a credit insurance policy to Countrywide Home Loans ("Countrywide") to insure a mortgage that Countrywide had extended to Ms. Gordon. Ms. Gordon defaulted on her mortgage, and Old Republic paid Countrywide pursuant to the insurance policy.

Old Republic filed suit in the Circuit Court for Baltimore County against Ms. Gordon, seeking the unpaid amount of her debt. It subsequently moved for summary judgment. Ms. Gordon opposed Old Republic's motion, arguing that she was entitled to summary judgment because Old Republic was an unlicensed collection agency, and therefore, it could not obtain a judgment against her. After a hearing, the circuit court

---

[1] "Credit insurance is a form of surety insurance and general casualty insurance," which generally is defined as insurance against loss or damage resulting from failure of debtors to pay their obligations to the creditor." 11 Couch on Ins. § 167:32 (2015) (references omitted). Old Republic explains that it provides coverage to the insured, typically a financial institution, if a borrower defaults on a loan, and once Old Republic pays to the insured the sums owed by the borrower, Old Republic "is equitably subrogated to the rights of the insured."

found, as a matter of law, that Old Republic was engaged in collection activity, and it granted Ms. Gordon's motion for summary judgment.

On appeal, Old Republic raises three questions for our review, which we have rephrased slightly, as follows:

1. Did the circuit court err in its construction of the phrase "collection agency" under BR § 7-101(c)?

2. Did the circuit court err in granting an oral summary judgment request?

3. Did the circuit court err in dismissing the case with prejudice?

For the reasons set forth below, we answer the first question in the affirmative, and therefore, we shall reverse the judgment of the circuit court and remand for further proceedings.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

On July 28, 2005, Ms. Gordon purchased a property in Parkville, Maryland for $589,700. On October 26, 2006, Countrywide extended a loan to Ms. Gordon in the amount of $95,000, secured by a deed of trust in the property.

Old Republic states, and Ms. Gordon does not dispute, that Old Republic issued a credit insurance policy to Countrywide in December 2006, "providing insurance coverage for loss if a qualified loan held by Countrywide defaulted." Although the insurance contract is not a part of the record on appeal, Old Republic stated in its motion to vacate,

---

[2] Because we answer the first question in the affirmative, and hold that the court erred in granting summary judgment in favor of Ms. Gordon, we need not address the other questions presented.

alter, or amend, or for other appropriate relief, and Ms. Gordon has not disputed, that the policy set forth subrogation rights, as follows:

> In the event of any payment under this Policy, the Company [i.e., Old Republic] shall be subrogated to all of the Assured's [i.e., Countrywide] rights of recovery against the Borrower and any other person or organization liable under the terms of the defaulted Note and against any reserve or holdback funds in its hands, and the Assured shall execute and deliver at the request of the Company instruments and papers and do whatever else is necessary to transfer, assign and secure such rights. The Assured shall do nothing after Loss to prejudice such rights, and the execution by the Assured of a release or waiver of the right to collect the unpaid balance of a Loan shall equally release the Company from any further obligation under this Policy as to said Loan, anything in this Policy to the contrary notwithstanding.

On or around February 1, 2011, Ms. Gordon defaulted on her loan, and Countrywide submitted a claim to Old Republic. At the time of default, $70,481.19 remained unpaid on the loan. Old Republic determined that the claim was covered and paid it. Old Republic then began to pursue repayment from Ms. Gordon.

On February 29, 2012, after negotiations with Ms. Gordon, Old Republic agreed to release the deed of trust in exchange for a payment of $9,000 and Ms. Gordon's acknowledgment that she still owed $85,541.62 on the loan, minus the $9,000 she paid. By October 2013, Old Republic had received no further payment from Ms. Gordon. It then filed a complaint for money due on accounts stated. Old Republic sought $70,481.19, as well as pre-judgment interest of $10,572 and attorney's fees of $10,572.18, plus costs. Old Republic also filed a motion for summary judgment on the ground that Ms. Gordon had no defense to the claim.

3

Ms. Gordon filed an answer and an opposition to the motion for summary judgment. She asserted that the collection attempt was illegal because Old Republic acquired the alleged debt when it was in default, and therefore, Old Republic was acting as a "collection agency" under BR § 7-101(c), but Old Republic was not licensed as a collection agency.[3] Relying on *Finch*, 212 Md. App. at 764, in which this Court held that "a judgment entered in favor of an unlicensed debt collector constitutes a void judgment as a matter of law," Ms. Gordon argued that Old Republic was not entitled to summary judgment against her because any judgment it obtained would be void. She requested that the circuit court enter judgment against Old Republic because it was not entitled to the relief it sought.

The circuit court directed Old Republic to file a reply, not to exceed five pages and limited to the argument that it was not authorized to bring the complaint because it was not licensed as a collection agency. Old Republic did so, asserting that it was not required to be licensed under MCALA because it did not engage in debt collection, but rather, it was

---

[3] Md. Code (2010 Repl. Vol.) § 7-101 of the Business Regulation Article ("BR") provides, in pertinent part, as follows:

> (c) "Collection agency" means a person who engages directly or indirectly in the business of:
>
> ***
>
> (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it.

"Consumer claim" is defined as "a claim that: (1) is for money owed or said to be owed by a resident of the State; and (2) arises from a transaction in which, for a family, household, or personal purpose, the resident sought or got credit, money, personal property, real property, or services." BR § 7-101(e). It is undisputed that the claim at issue in this case is a consumer claim.

licensed in the State of Maryland to conduct insurance business. It argued that it was pursuing the subrogation rights it obtained after paying Countrywide pursuant to its insurance policy, and therefore, it did not "acquire" Ms. Gordon's debt at a time when she was in default, but rather, it "stepped into the shoes" of Countrywide and enjoyed "the same rights that [Countrywide] enjoyed prior to filing its claim." Moreover, Old Republic stated that it did not engage in the debt collection agency business, noting that it did not undertake debt collection for third parties or purchase defaulted debts from third parties for the purpose of collection. Citing MCALA's legislative history, it asserted that BR § 7-301(c)(1)(ii) was targeted at "'debt purchasers,' a special subset of entities," which did not include insurance companies pursuing subrogation rights. Consequently, it argued that it was not a collection agency, and it was permitted to obtain a judgment against Ms. Gordon.

Ms. Gordon disagreed, asserting that Old Republic was requesting the circuit court to "create a judicial exception for it that does not exist under the statute or common law." Stating that MCALA governs businesses attempting to assert a consumer claim "if the claim was in default when the person acquired it," Ms. Gordon asserted that, because Old Republic acquired this debt when it was in default and was trying to collect it, Old Republic was required to be licensed under MCALA, regardless of its status as an insurance company.

On March 6, 2014, the circuit court held a hearing on Old Republic's motion. Counsel for Old Republic listed three reasons why Old Republic should not be required to be licensed in this matter. First, Old Republic was an insurance company and did not do

5

business as a collection agency. Second, MCALA was targeted toward debt purchasers, not insurance companies pursuing subrogation rights, and Old Republic did not purchase the debt at issue in this case. Third, Old Republic's rights vested prior to Ms. Gordon's default, as it was essentially stepping into Countrywide's shoes as Ms. Gordon's creditor. It argued that, because MCALA was not targeted toward a party in Old Republic's position, Old Republic did not qualify as a collection agency under BR § 7-101, and it did not need to be licensed as such.

Counsel for Ms. Gordon argued that Old Republic acquired its interest in Ms. Gordon's debt when it was in default, and it was now pursuing a consumer claim against her. Accordingly, counsel asserted that, pursuant to the plain language of BR § 7-101, Old Republic was acting as a collection agency. He argued that, because any judgment obtained by Old Republic, an unlicensed collection agency, would be void, Ms. Gordon was entitled to judgment in her favor.

Counsel for Ms. Gordon also noted that BR § 7-102 contains a list of persons and entities to whom MCALA is inapplicable, and insurance companies pursuing subrogation rights are not listed. He argued that this list would be essentially meaningless if the court carved out a new exception for Old Republic.

At the end of the hearing, counsel for Old Republic stated that, because the parties had been limited to five pages of argument on the issue of interpreting MCALA, it believed that the parties could "flesh out" the record more substantially with further submissions, particularly with regard to MCALA's legislative history. The court responded: "If you

6

want to supplement the record, I am going to permit you to do that." The court took the parties' motions for summary judgment under advisement and indicated that it would issue a written opinion at an unspecified later date.

On March 18, 2014, the circuit court issued a memorandum opinion. The court stated that there were no facts in dispute, and the sole question before it was the legal issue whether Old Republic was required to be licensed as a collection agency in order to pursue its claim against Ms. Gordon. The court found that, under the plain language of MCALA, Old Republic was acting as a collection agency because it was asserting a consumer claim related to a debt that it acquired while the debt was in default. It refuted Old Republic's arguments to the contrary, stating: "That [Old Republic] acquired the debt through a subrogation agreement as opposed to a debt purchase is immaterial. The plain meaning of the statutory language captures the activity that [Old Republic] is engaging in."

The court stated that MCALA's legislative history "does not supersede a plain meaning analysis of the statutory language," which "requires a court to end its inquiry into legislative intent when the statutory language is unambiguous and the resulting application of the statute is reasonable, as it is in the instant case." In any event, it was not persuaded by Old Republic's argument that MCALA was targeted solely at debt purchasers because BR § 7-102(b) contained an extensive list of persons and entities who were not required to obtain a collection agency license, and insurance companies were not included in that list. Because it found that Old Republic was acting as a collection agency without a license, the

7

court granted summary judgment to Ms. Gordon and dismissed Old Republic's action with prejudice.

On April 14, 2014, Old Republic filed a motion to vacate, alter, or amend, or for other appropriate relief. It stated that the court's initial order limiting it to a five page reply on the issue whether it was required to be licensed "materially limited" its ability to respond, and therefore, it was "materially prejudiced" when the court granted Ms. Gordon's oral summary judgment motion. It explained that it was in the process of preparing its supplemental memorandum when the court issued its order, but it was unable to submit it prior to the order. Old Republic asserted that the court "appear[ed] to miss certain material points" in granting Ms. Gordon's motions. In particular, it noted that the court did not discuss what it meant to "engage in the business of" collecting consumer claims, and it argued that it was not engaged in any such business.

Old Republic elaborated on its argument that MCALA was targeted only at regulating debt purchasers. It asserted that debt purchasers were a very specific group of entities, whose primary business was collecting debts that they had purchased. It contended that it was not a debt purchaser, and accordingly, MCALA did not apply to it. Old Republic stated that it was not seeking to carve out a judicial exception for itself, but rather, it simply was seeking a construction of the statute that recognized it was not "engaged in the business of" collecting consumer claims.

Old Republic also argued that the rule of lenity was applicable to the court's analysis because MCALA contained both civil and criminal provisions. It asserted that, because it

8

was at least ambiguous whether MCALA applied to it, pursuant to the rule of lenity, that ambiguity should be resolved in its favor.

Finally, Old Republic asserted that, even if the court disagreed with Old Republic's proposed interpretation of MCALA, it would be deciding that Old Republic did not have standing to bring the complaint. Accordingly, it argued that only a dismissal without prejudice was appropriate because the court's decision would not constitute an adjudication of the case on the merits.

Ms. Gordon filed a response, characterizing Old Republic's pleading as a "'kitchen sink' tome." She asserted that Old Republic did not raise any new arguments and had a full and fair opportunity to present its position before the circuit court, objecting to the five-page limitation only after the court ruled against it. In any event, Ms. Gordon argued that MCALA was unambiguous, and therefore, its legislative history and the rule of lenity were not applicable. She asserted that the court did not err in holding that the plain language of MCALA required Old Republic to be licensed as a collection agency and precluded it from obtaining a judgment against her. Finally, she argued that the court did not err in dismissing Old Republic's action with prejudice, as any judgment it obtained would be void.

Ms. Gordon subsequently filed a document entitled Supplemental Authority in Opposition to Plaintiff's Motion to Vacate, Alter or Amend. She noted that Old Republic was involved in a related matter in the Circuit Court for Frederick County, *Old Republic Insurance Company v. Joana Oteng*, in which it sought to enforce a debt as subrogee of a mortgage company, and the circuit court in that case found that Old Republic was a

9

collection agency and could not collect the debt. She attached a copy of the Frederick County decision.

On June 24, 2014, the circuit court issued another memorandum opinion and order denying Old Republic's motion to vacate, alter or amend. The court rejected Old Republic's claim that it did not have an adequate opportunity to respond to Ms. Gordon's oral motion for summary judgment, noting that: (1) Old Republic did not object to the oral motion at the hearing; and (2) Ms. Gordon "unequivocally requested 'that the Court grant judgment against [Old Republic] since it is not entitled to the relief it seeks in this action' in her Opposition to Motion for Summary Judgment." The court further noted that it had permitted Old Republic to submit a supplemental response to the court after the hearing, but Old Republic failed to submit it timely. For these reasons, the court believed that, even if there were any procedural abnormalities, Old Republic was not prejudiced. In any event, the court stated that the additional materials recently submitted by Old Republic did not impact its decision because MCALA was unambiguous. The court further ruled that dismissal with prejudice was proper because, Old Republic's assertions notwithstanding, the court did not rule that Old Republic lacked standing to sue Ms. Gordon, but rather, it ruled that Old Republic was engaged in illegal debt collection and was not permitted to obtain the relief it was seeking. Accordingly, the court denied Old Republic's motion to vacate, alter, or amend. This timely appeal followed.

DISCUSSION

## I.

### Motion to Dismiss

Before addressing the propriety of the circuit court's ruling on the merits, we address Ms. Gordon's motion to dismiss this appeal. This motion is based on Old Republic's action, subsequent to the judgment here, in obtaining a Maryland collection agency license. Ms. Gordon asserts that, given that action, this appeal should be dismissed as moot because it "now concerns a hypothetical question for which no further controversy exists." She contends that, "[b]y voluntarily seeking and obtaining a collection agency license as of November 7, 2014, Old Republic is equitably estopped from acting in a manner contrary to its declaration to the Maryland Collection Agency Licensing Board that it requires a collection agency license."

Addressing first the mootness argument, this Court has stated that "'[a] case is moot when there is no longer any existing controversy between the parties at the time that the case is before the court, or when the court can no longer fashion an effective remedy.'" *Thana v. Bd. of License Comm'rs for Charles County*, 226 Md. App. 555, 567 (2016) (quoting *Green v. Nassif*, 401 Md. 649, 654 (2007)). Here, Old Republic's action in obtaining a license after the hearing does not make this appeal moot. The issue presented, whether the circuit court properly determined that the action against Ms. Gordon should be dismissed because Old Republic did not have a license at the time it instituted suit, remains an existing controversy. Dismissal on the grounds of mootness is not warranted.

11

Turning to the equitable estoppel argument, we note that the Court of Appeals has explained the doctrine of equitable estoppel as follows:

> The basis of equitable estoppel is the effect of the conduct of one party on the position of the other party" and that "[t]he estopped party is therefore 'absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . against another person, who has in good faith relied upon such conduct.'"

*Dickerson v. Longoria*, 414 Md. 419, 453 (2010) (quoting *Creveling v. GEICO*, 376 Md. 72, 101-02 (2003)). Equitable estoppel consists of three elements: "'voluntary conduct or representation, reliance, and detriment.'" *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 316 (2007) (quoting *Mona Elec. Co. v. Shelton*, 377 Md. 320, 334 (2003)).

Ms. Gordon argues that Old Republic voluntarily represented to the licensing board that it is a collection agency, and the licensing board relied on that representation in issuing Old Republic a license. She asserts that this "inures to the detriment of the State to the extent such action is deemed to mitigate its prior illegal collection activity."

Old Republic disagrees. It argues that Ms. Gordon cannot establish any of the elements of equitable estoppel because it made no representation to her, she did not rely on any representation from Old Republic, and she was not harmed by any representation from Old Republic. It asserts that it "chose to act in compliance with the lower court's ruling . . . while [it] pursues an appeal to hopefully remedy what [it] perceives" as an erroneous decision, and that this action should not preclude it from maintaining this appeal.

We agree with Old Republic on this issue. Ms. Gordon has not alleged that her position in the underlying litigation changed based on Old Republic's action, after the

12

court's ruling, in getting a license. The doctrine of equitable estoppel is inapplicable here and does not warrant dismissal.

## II.

## MCALA

In *Finch*, 212 Md. App. at 758, this Court noted that, pursuant to Maryland law, persons doing business as a collection agency generally must have a license. *See* BR § 7-301(a) ("[A] person must have a license whenever the person does business as a collection agency in the State.").[4] With respect to lawsuits, we stated in *Finch* that, "[g]enerally, a party that lacks a required license may not file an action in a Maryland court to enforce rights related to its unlicensed activities." *Id.* at 756-57. Specifically, with respect to debt collection, we explained that "MCALA is an integral part of a collection agency's status as a claimant in Maryland," and without a license, a collection agency has no authority to file suit against the debtor. *Id.* at 763-64. Accordingly, a "judgment entered in favor of an unlicensed debt collector constitutes a void judgment." *Id.* at 764.

The issue presented here is whether Old Republic is a collection agency under MCALA. Old Republic argues that the circuit court erred in ruling that an insurer pursuing its subrogation right is a collection agency business required to get a license.

---

[4] The Maryland Collection Agency Licensing Act ("MCALA") specifically excludes certain persons, such as a bank and a mortgage lender. BR § 7-102. The parties agree that an insurance company pursuing subrogation rights is not included in this list.

In determining whether the circuit court properly granted summary judgment in favor of Ms. Gordon, our first determination is whether there was a genuine dispute of material fact. *Deutsche Bank Nat'l Trust Co. v. Brock*, 430 Md. 714, 727 (2013). For a disputed fact to be material, it must be one that will affect the outcome of the case. *Id.* "[A] reasonable dispute over a material fact will preclude summary judgment, because its resolution lies with the jury." *Carter v. Aramark Sports & Entm't Servs., Inc.*, 153 Md. App. 210, 225 (2003), *cert. denied*, 380 Md. 231 (2004). Where, however, "there is no material fact in dispute," we then "determine whether the trial court correctly granted summary judgment as a matter of law." *Doe v. Md. State Bd. of Elections*, 428 Md. 596, 606 (2012).

Here, there are no facts in dispute. As indicated, the issue before us is whether, as a matter of law, Old Republic was a collection agency pursuant to MCALA.

Maryland Code BR § 7-101(c) defines a collection agency as follows:

> "Collection agency" means a person who engages directly or indirectly in the business of:
> (1)(i) collecting for, or soliciting from another, a consumer claim; or
>     (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it;
> (2) collecting a consumer claim the person owns, using a name or other artifice that indicates that another party is attempting to collect the consumer claim;
> (3) giving, selling, attempting to give or sell to another, or using, for collection of a consumer claim, a series or system of forms or letters that indicates directly or indirectly that a person other than the owner is asserting the consumer claim; or

14

(4) employing the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim.[5]

The section relied on by the parties is BR § 7-101(c)(1)(ii), which applies to a person who "engages directly or indirectly in the business of . . . collecting a consumer claim the person owns, if the claim was in default when the person acquired it."

Old Republic contends that it is "simply not doing business as a collection agency, and is not engaged in the business of acquiring and collecting upon defaulted consumer debt." Rather, it is "[a]n insurer pursuing subrogation rights as an adjunct of its insurance business."[6] Accordingly, Old Republic contends that it was not required to obtain a license pursuant to MCALA.

Ms. Gordon contends that, "[b]ased upon the undisputed facts," she "was entitled to judgment as a matter of law since Old Republic was acting as a collection agency without a mandatory license." She asserts that the language of BR § 7-101 is unambiguous, and by its plain terms any business entity that "directly or indirectly engages in collecting debts

_____

[5] BR § 1-101(g) provides that a "'[p]erson' means an individual, receiver, trustee, guardian, personal representative, fiduciary, representative of any kind, partnership, firm, association, corporation, or other entity."

[6] There is no factual dispute here that Old Republic's claim against Ms. Gordon is that of an insurer's subrogation right. *See Fin. Co. of Am. v. U.S. Fid. & Guar. Co.*, 277 Md. 177, 182 (1976) ("Subrogation is a long-standing equitable doctrine in Maryland whereby one who is secondarily liable for a debt, and has paid it, stands in the place of the creditor (in this case, the satisfied obligee) and is entitled to the benefit of all the securities and remedies which could have been resorted to for the payment of the debt.").

must be licensed." She contends that Old Republic is asking this Court "to create a judicial exception for it that does not exist under the statute or common law."[7]

## A.

## Principles of Statutory Interpretation

In addressing the issue presented here, whether Old Republic falls within the definition of a "collection agency" under MCALA, we apply well-settled ruled of statutory construction:

> When interpreting statutes, we seek to ascertain and implement the will of the Legislature. *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580 (2014); *Johnson v. Mayor & City Council of Baltimore City*, 387 Md. 1, 11 (2005); *Witte v. Azarian*, 369 Md. 518, 525 (2002). Our first step toward that goal is to examine the text. "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *Lockshin v. Semsker*, 412 Md. 257, 275 (2010). If ambiguities are found, other indicia of legislative intent are consulted, including the relevant statute's legislative history, the context of the statute within the broader legislative scheme, and the relative rationality of competing constructions. *Witte*, 369 Md. at 525-26.

*Harrison-Solomon v. State*, 442 Md. 254, 265-66 (2015) (footnote omitted). The Court further noted, however, that given "the ultimate end of divining the will of the Legislature," this Court may look to the legislative history "even if merely to ratify that our conclusion

---

[7] Ms. Gordon makes two additional arguments. First, she objects to references in Old Republic's brief to circuit court proceedings in other cases, arguing that they were not part of the record below and should not be considered. We will not consider those cases in the resolution of this case. Second, she asserts that Old Republic did not present in any pleading its theory of subrogation, and its argument on appeal in this regard is waived. The record reflects, however, that Old Republic clearly and consistently advised the circuit court that its claim against Ms. Gordon was based on its subrogation rights. The argument is not waived.

of the unambiguous meaning of the statute is correct." *Id.* at 265 n.6. "The interpretation of a statute is a question of law, which we consider *de novo*." *Id.* at 265.

**B.**

**Evolution of MCALA**

The statutory provision we must construe in this case was added in 2007. To put this language in context, we will briefly discuss the provisions of MCALA prior to that time.

Prior to 2007, MCALA applied only to businesses that collected debt owed to another person. *See* Charles W. Turnbaugh, Commissioner of Financial Regulation and Chairman of the Maryland Collection Agency Licensing Board, Testimony in Support of H.B. 1324 ("Maryland law regulates collection firms that collect consumer debt as agents of the creditor (hospitals, retailers, credit card issuers etc.). The law does not require licensing for businesses that only collect their **own** consumer debts, unless the business uses a name or other artifice that indicates that another party is attempting to collect the consumer debt."); 65 Md. Op. Atty. Gen. 316 (1980) (persons who collect rent owed to themselves as owners of the claim are not in the business of a collection agency, but a third party, such as a management agent collecting debt on behalf of a homeowners association, is considered a collection agency). Old Republic contends, and Ms. Gordon does not dispute, that, prior to 2007, an insurance company pursing a subrogation claim was not "viewed to be in the business of a collection agency" requiring a license.

17

In 2007, the General Assembly amended the definition of "collection agency," adding the language at issue here, i.e., a person who engages in the business of "collecting a consumer claim the person owns, if the claim was in default when the person acquired it." BR § 7-101(c)(1)(ii). The question here is whether this new language makes Old Republic a collection agency.

## C.

### "In the Business of"

Old Republic argues that it is not a company that "engages . . . in the business of . . . collecting a consumer claim." It asserts that it is an insurance company, and pursing subrogation rights is merely incidental to its primary business of insurance, and therefore, it does not qualify as engaged "in the business of" debt collection.

There is a dearth of authority in Maryland addressing the meaning of the phrase "in the business of." Other courts, however, have defined the term. In *American Legion Post # 49 v. Jefferson Insurance Co.*, 485 A.2d 293, 294 (N.H. 1984), the New Hampshire Supreme Court opined that "in the business of" has two ordinary meanings: (1) "any regular activity that occupies one's time and attention, with or without direct profit motive;" or (2) "an activity with a direct profit objective." *Accord Auto-Owners Ins. Co. v. Veterans of Foreign Wars Post 5906*, 276 S.W.3d 298, 301 (Ky. Ct. App. 2009) (quoting *Jefferson Insurance Co.*, 485 A.2d at 294). *See also Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1107 (9th Cir. 2001) ("[A]n entity is engaged 'in the business of' where that entity buys or sells to further its commercial enterprise.").

There is support for Old Republic's contention that, in interpreting the phrase "in the business of," a court should look at the nature and extent of the activity. For example, in *Farmers Insurance Exchange v. AAA of Michigan*, 671 N.W.2d 89, 94 (Mich. Ct. App. 2003), the Court of Appeals of Michigan applied a "primary purpose/incidental nature test." In that case, the issue was whether a day-care provider's vehicle was a "motor vehicle operated in the business of transporting passengers" pursuant to a statute providing that the insurance of such a vehicle must pay no-fault benefits to an injured passenger. *Id.* at 90. The court held that the vehicle was not operated "in the business of" transporting passengers because the day-care provider's transportation of the children to school was an incidental part of her day-care business and the vehicle's primary use was as a personal vehicle. *Id.* at 94-95. *Accord State Farm Mut. Auto. Ins. Co. v. Seeba*, 433 S.E.2d 414, 416 (Ga. Ct. App. 1993) (the "words 'engage in business' imply an element of continuity or habitual practice," not a secondary activity); *Wellesley College v. Attorney Gen.*, 49 N.E. 2d 220, 227 (Mass. 1943) (college was not "in the business of" serving meals to the public for purposes of meal tax, but rather, that was incidental to its function as an educational institution).

Other courts, however, have interpreted the phrase "in the business of" more broadly. For example, in *Mission Insurance Co. v. Hartford Accident & Indemnity Co.*, 160 Cal. App. 3d 97, 101-02 (Ct. App. 1984), the court held that a company was "engaged in the business of" leasing trailers without operators, even if it was only a small part of the company's business, which did not make a profit.

Given the different interpretations of the phrase "in the business of," we conclude that the language of the statute is ambiguous in the context of the issue presented here. Accordingly, we look to the legislative history of MCALA.

**D.**

**Legislative History**

A review of the legislative history underlying the 2007 amendments to MCALA indicates that the General Assembly did not intend to change the law regarding "collection agencies" that are required to obtain a license to include insurers pursuing subrogation claims. Instead, the legislative history makes clear that the General Assembly enacted the 2007 amendments to regulate "debt purchasers," who were exploiting a loophole in the law to bypass the MCALA's licensing requirements.

The Senate Finance Committee Report on House Bill 1324 explained:

House Bill 1324 extends the purview of the State Collection Agency Licensing Board to include persons who collect consumer claims acquired when the claims were in default. These persons are known as "debt purchasers" since they purchase delinquent consumer debt resulting from credit card transactions and other bills; these persons then own the debt and seek to collect from consumers like other collection agencies who act on behalf of original creditors.

Charles W. Turnbaugh, Commissioner of Financial Regulation and Chairman of the Maryland Collection Agency Licensing Board offered the following testimony:

[T]the evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws. Entities, such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement. The

20

federal government has recognized and defined debt purchasers as collection agencies, and requires that these entities fully comply with the Federal Fair Debt Collection Practices Act.

This legislation would include debt purchases within the definition of "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State. Other businesses that are collecting their own debt continue to be excluded from this law.

Susan Hayes, a member of the Maryland Collection Agency Licensing Board,

submitted the following in support of the bill:

The traditional method of dealing with distressed accounts has been for creditors to assign these accounts to a collection agency. These agencies, operating under a contingency fee arrangement with the creditor, keep a portion of the amount recovered and return the balance to the creditor. Today, a different option is available – selling accounts receivables to a third party debt collector at a discount.

\*\*\*

HB 1324 closes a loophole in licensing of debt collectors under Maryland law. Just because a professional collector of defaulted debt "purchases" the debt, frequently on a contingent fee basis, should not exclude them from the licensing requirements of Maryland law concerning debt collectors.

The March 28, 2007, Floor Report of the House Economic Matters Committee on

House Bill 1324 noted the following:

[The Department of Labor, Licensing, and Regulation] advises that the State Collection Agency Licensing Board currently regulates 1,304 collection agencies. The department estimates that the bill would make 40 debt purchasers subject to State regulation. Debt purchasers are not currently subject to regulation, as they purchase the debt directly from the creditor and are generally compensated as a percentage of their recovery. Although this activity falls under the federal Fair Debt Collection Practices Act, Maryland consumers are not currently protected in these transactions by the State Collection Agency Licensing Board

\*\*\*

21

*Q.* *What problem is this bill addressing?*

*A.* Although debt collectors must be licensed in Maryland to collect debts owed to a creditor, currently individuals collecting debts owed to themselves are exempt. Creditors have taken to selling defaulted receivables at a discount to collectors who are not licensed under Maryland law, although they are subject to the federal Fair Debt Collection Practices Act.

## E.

## Conclusion

Given this legislative history, it is clear that the General Assembly had a specific purpose in mind in adopting the 2007 amendments, i.e., including debt purchasers, people who purchased defaulted accounts receivable at a discount, within the purview of MCALA. There is no dispute that Old Republic is not a "debt purchaser." It did not purchase Ms. Gordon's debt at a discount. Rather, Old Republic became vested with subrogation rights to Countrywide's claim pursuant to Old Republic's pre-existing insurance policy with Countrywide.[8]

The legislative history of MCALA does not support the conclusion that the General Assembly intended to include an insurance company pursuing subrogation rights under the definition of "collection agency" in BR § 7-101.[9] Accordingly, the circuit court erred in

---

[8] The subrogation rights vested in Old Republic after Ms. Gordon defaulted and after it compensated Countrywide under their insurance agreement. *See Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 414 n.3 (1989) ("The right of subrogation does not arise until a debt has actually been paid.").

[9] Because an insurance company pursuing subrogation claims does not qualify as a collection agency, there was no need to include an insurance company in the list of exclusions found in BR § 7-102.

granting Ms. Gordon's motion for summary judgment on the ground that Old Republic was a collection agency and did not have the right to sue Ms. Gordon because it did not have a license.

**MOTION TO DISMISS APPEAL DENIED. JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1020

September Term, 2014

_____

OLD REPUBLIC INSURANCE
COMPANY

v.

NANCY GORDON

_____

Graeff,
Kehoe,
Nazarian,

JJ.

_____

Dissenting Opinion by Nazarian, J.

_____

Filed:  April 27, 2016

I agree with my colleagues that Ms. Gordon's motion to dismiss this appeal should be denied and that Old Republic Insurance Company's ("Old Republic") decision to obtain a collection agency license neither moots the case nor estops Old Republic from challenging the circuit court's decision. I respectfully disagree, though, that there is any ambiguity in Md. Code (1992, 2015 Repl. Vol.), § 7-101(c) of the Business Regulation Article ("BR"), or any doubt that it applies to an issuer of credit insurance. The General Assembly may well not have meant to include insurance companies *generally* within the definition of "collection agency" in its 2007 revisions to the Maryland Collection Agency Licensing Act ("MCALA"). But I see no principled way to distinguish *credit* insurers like Old Republic—which sell, for profit and as their avowed business, insurance policies against default on a debt, then seek to collect after they pay claims—from any other company that buys and collects defaulted debt.

## I.

The majority and I agree on the core factual and analytical premises of the case, all of which are undisputed:

1.  Countrywide Home Loans ("Countrywide") lent money to Nancy Gordon.

2.  Old Republic issued a credit insurance policy (the "Policy") to Countrywide.

3.  Ms. Gordon's debt to Countrywide qualified as a consumer claim. *See* slip op. at 4 n.3.

4.  Ms. Gordon defaulted on the debt.

5.  Countrywide made a claim against the Policy.

1

6. Old Republic paid Countrywide on the claim.

7. Old Republic became subrogated to Countrywide's rights against Ms. Gordon.

8. Old Republic was not licensed as a collection agency in Maryland at any relevant time.[1]

We agree as well that the outcome of this case is driven by well-settled principles of statutory construction, slip op. at 16-17, as applied to the definition of "collection agency" found in the 2007 amendment of MCALA. If a collection agency sues to collect a consumer debt at a time when it lacks a license, any ensuing judgment is void. *Finch v. LVNV Funding LLC*, 212 Md. App. 748 (2013). Ms. Gordon argued in this case that Old Republic was a collection agency at the time its subrogation rights ripened, and that she was entitled to judgment on Old Republic's collection claim because Old Republic lacked a debt collector's license at the time it sought to enforce the claim. The Circuit Court for Baltimore County agreed.

## II.

As the majority states it, "the issue before us is whether, as a matter of law, Old Republic was a collection agency pursuant to MCALA." Slip op. at 14. The definition of collection agency has five elements: a collection agency is "**[a]** a person who **[b]** engages directly or indirectly in the business of . . . collecting a **[c]** consumer claim the **[d]** person owns, **[e]** if the claim was in default when the person acquired it." BR § 7-101(c)(ii) (bold,

---

[1] Although Ms. Gordon sought to use Old Republic's eventual decision to obtain a license for estoppel rather than evidentiary purposes, I view it as being in the nature of a subsequent remedial measure, *cf.* Maryland Rule 5-407, which only bolsters my agreement with the majority on this point.

2

bracketed markers added). Old Republic indisputably satisfied four of these elements in connection with Ms. Gordon's debt: [a] Old Republic is a person for purposes of MCALA; [c] Ms. Gordon's debt qualified as a consumer claim; [d] the debt was originally owed to Countrywide, but Old Republic eventually came to own it; and [e] the debt was in default at the time Old Republic took ownership. So Old Republic's status as a collection agency, and thus this case, turns on whether it "engages directly or indirectly in the business of" collecting consumer claims.

Old Republic casts this question in broad terms—overly broad, in my view. It characterizes itself as "[a]n insurer pursuing subrogation rights as an adjunct of its insurance business," slip op. at 15, and argues that insurance companies are engaged in the business of insurance, not debt collection. The majority ultimately agrees, finding ambiguity in the phrase "in the business of" from the absence of Maryland case law interpreting it and the use of varying formulations in other states. Slip op. at 18-20. Then, in light of that ambiguity, the majority looks at the legislative history of the 2007 MCALA amendments and finds no intention to include insurance companies. *Id*. at 20-23.

To me, this is the wrong question. The issue is not whether the General Assembly meant to exclude all insurance companies from MCALA—we don't have all insurers before us—or whether insurers who seek subrogation can be characterized as a "debt purchaser." The issue is whether persons (who can be insurers) who issue credit insurance policies that entitle them to collect defaulted debts are "in the business" of collecting consumer claims. Or, put another way, the relevant "business" for purposes of this case isn't insurance, but *credit* insurance. And viewed through that lens, there is no ambiguity

3

at all: Old Republic was—directly, by design and with the blessing of the Maryland Insurance Administration—in the business of collecting consumer claims.

The picture sharpens when one looks more closely at credit insurance itself. Citing a classic treatise on insurance, Old Republic describes credit insurance as "a form of surety insurance and general casualty insurance" that is "generally defined as insurance against loss or damage resulting from failure of debtors to pay their obligations to the creditor." (quoting 12 L.R. Russ & T.F. Segalla, *Couch on Insurance 3d*, § 167.31 (2005)). The Policy itself is not contained anywhere in the Record Extract or the parties' various appendices,[2] but its purpose and structure, and the purpose and structure of this line of business, are not in dispute. Lenders buy (or require borrowers to buy on their behalf) credit insurance as protection against the possibility that borrowers fail to pay the loan. When the borrower (Ms. Gordon) defaults, the insured (the lender, in this case Countrywide) can make a claim against the policy to collect the unpaid debt. And "*[i]n the event of any payment* under this Policy, [Old Republic] shall be subrogated to all of [Countrywide]'s rights of recovery against [Ms. Gordon] and any other person or organization liable under the terms of the defaulted Note and against any reserve or holdback funds in its hands . . . ." (Emphasis added.) Importantly, Old Republic's rights

---

[2] Old Republic's descriptions of and one quotation from the Policy in its brief cite two sources: the Reply to Opposition to Motion for Summary Judgment that it filed in the circuit court, a four-page memorandum that neither attaches nor even quotes from the Policy, and its motion to alter or amend, a longer document that quotes the one provision of the Policy that follows but doesn't attach it. The rest of the Policy language doesn't really matter for my purposes, but it's frustrating that the many heated and voluminous filings don't contain the one document that defines the parties' rights vis-à-vis each other.

to step into its insured's shoes ripen after the borrower defaults and the Company pays on the claim.

Old Republic's agreement to assume the risk of Countrywide's loan to Ms. Gordon was not an act of altruism or charity. According to its Company Details Report from the Maryland Insurance Administration, Old Republic is a property and casualty insurance company licensed to sell seven different lines of insurance. The credit insurance subsidiary before us in this case is part of a New York Stock Exchange-traded holding company. Old Republic underwrites the risks it is assuming and charges a premium in exchange for its agreement to assume that risk, and the risk it assumes includes some assessment of the likelihood that it will collect any unpaid balance from the borrower. If Old Republic predicts the risks appropriately and calculates premiums correctly, it makes a profit. But whether or not it succeeds, I would hold that Old Republic is, by any rational measure, *in the business* (and directly so) of selling credit insurance in Maryland for profit, a contractual relationship that includes an enforceable right, *after default and payment to the original creditor*, to collect the unpaid consumer debt previously owned by its insured. And for that reason, I would affirm the circuit court's summary judgment in favor of Ms. Gordon.

## III.

Two other points lend further support to my view of this case.

*First*, although I would affirm the circuit court's judgment without analyzing the legislative history of the 2007 MCALA amendments, credit insurers do, in my view, fall within the universe of debt collectors that the General Assembly was trying to capture in

5

the updated definition of "collection agency." Indeed, from a functional standpoint, credit insurers are nearly indistinguishable from third-party debt collectors. Both acquire consumer debt from a prior (if not the original) owner—and the use of the broader word "acquired," rather than "purchased," seems to contemplate that the collection agency could take ownership of the debt through different mechanisms. Upon acquisition, both step into the shoes of their predecessors and take the predecessor's rights, whatever they may be, to collect the unpaid portion of the debt.

The only differences between the two businesses that I can discern lie in the timing and manner of calculating what each pays to acquire the debt. Debt purchasers buy debt at the back end of the life cycle. They pay a discount from its face value, and if they negotiate that discount properly, they collect more from debtors than they paid. Credit insurers, on the other hand, get paid up front, in the form of a premium that covers the risk of default and projects the risk of collection (or not) through subrogation after they pay the claim. In both scenarios, the original creditor gets paid for the debt after default and pays, either by taking less than it's owed or by paying a premium, for the hedge against recovering less or nothing at all. Even with these differences, though, the ability to collect unpaid debt from consumer debtors that originated elsewhere is a core element of their businesses. From the perspective of the debtor—the party that the Maryland *Consumer Debt Collection Act* is designed to protect—it makes no difference *how* the new creditor came to acquire their debt, only that they're trying to collect it. And in that role, I see nothing in the statute or the legislative history expressing an intention to exempt credit insurers from fair debt collection rules.

6

*Second*, MCALA does (and did before the 2007 amendments) exempt certain specified businesses from its reach—mostly financial institutions, but also, among others, "a title company as to its escrow business." BR § 7-102(b)(7). This tells me that the General Assembly understood that not all insurers and insurance products are the same, and confirms my belief that Old Republic's request for a sweeping exemption overstates the question.

For these reasons, I respectfully dissent.