**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

_____

No. 1524
September Term. 2015

_____

KYLE BLACKSTONE, ET AL.
v.
DINESH SHARMA, ET AL.

_____

No. 1525
September Term, 2015

_____

TERRANCE SHANAHAN, SUBSTITUTE.
TRUSTEE, ET AL.
V.
SEYED MARVASTIAN, ET AL.

_____

CONSOLIDATED CASES

Wright,
Shaw Geter,
Salmon, James P.,
   (Senior Judge, Specially Assigned)

JJ.

Opinion by Salmon, J.

Filed:  June 6, 2017

This consolidated appeal originates from two foreclosure cases filed in the Circuit Court for Montgomery County. In both cases, substitute trustees (collectively, "appellants") acting on behalf of Ventures Trust 2013-I-H-R ("Ventures Trust"), a statutory trust formed under the laws of the State of Delaware, filed orders to docket foreclosure suits against homeowners in the State of Maryland. The circuit court judges who considered the cases dismissed the actions, determining that pursuant to the Maryland Collection Agency Licensing Act ("MCALA"), codified at Maryland Code (1992, 2015 Repl. Vol.), Business Regulation Article ("B.R.") § 7-101, *et seq.*, Ventures Trust was required to be licensed as a collection agency and, because Ventures Trust had not obtained such a license, any judgment entered as a result of the foreclosure actions would be void. The dismissal of these foreclosure actions, without prejudice, presents us with two questions:

> 1. Under the MCALA, does a party who authorizes a trustee to initiate a foreclosure action need to be licensed as a collection agency before filing suit?
> 2. If the answer to question one is in the affirmative, does the licensing requirement apply to foreign statutory trusts such as Ventures Trust?

We shall answer "yes" to both questions and affirm the judgments entered by the Circuit Court for Montgomery County.

## BACKGROUND

### Appeal No. 1524

On August 4, 2006, Dinesh Sharma, Santosh Sharma, and Ruchi Sharma[1] (collectively "the Sharmas") executed a deed of trust that encumbered real property in Potomac, Maryland, in order to secure a $1,920,000 loan. Washington Mutual Bank, FA was the lender. The Sharmas, in December 2007, defaulted on the loan by failing to make payments when due.

Ventures Trust, by its trustee MCM Capital Partners, LLC ("MCM Capital"), acquired ownership and "all beneficial interest" of the loan on October 9, 2013. The substitute trustees[2] appointed by Ventures Trust filed an order to docket, initiating the foreclosure action, on November 25, 2014. The Sharmas owed $3,008,536.23 on the loan as of November 25, 2014.

The Sharmas responded to the foreclosure action by filing a counterclaim which was later severed by order of the circuit court. They also filed a motion to dismiss or enjoin

---

[1] The Sharmas contend that Ruchi Sharma, though listed as a borrower on the deed of trust, was not intended to be listed as such and signed the deed of trust only as a witness. They allege that the deed of trust was altered after Ruchi signed it. Whether that allegation is true has no impact on our decision.

[2] The substitute trustees in Appeal No. 1524 are Kyle Blackstone, Terrance Shanahan, and William O'Neill. The substitute trustee in Case No. 1525 is Terrance Shanahan. At the time of the filing of the order to docket in Appeal No. 1525, Erik Yoder was also a substitute trustee, but he no longer is a party to this action.

2

the foreclosure sale pursuant to Md. Rule 14-211.[3] The substitute trustees moved to strike the Sharmas' motion, which the court granted on May 7, 2015. The Sharmas filed a motion to alter or amend the May 7th order. On June 22, 2015 the court vacated its May 7th order, denied the substitute trustees' motion to strike the Sharmas' motion to dismiss, and set a hearing date for arguments concerning the motion to dismiss.

Following a hearing, the court, on August 28, 2015, issued an opinion and order granting the motion to dismiss the foreclosure action without prejudice. In its written opinion the circuit court determined that, pursuant to the MCALA, Ventures Trust was a collection agency and was therefore required to be licensed before attempting to collect on the deed of trust. The circuit court ruled that because Ventures Trust was not licensed as a collection agency, it had no right to file a foreclosure action. In its written opinion, the court also rejected Ventures Trust's contention that it was a "trust company" and was therefore exempt from MCALA's licensure requirements. The substitute trustees noted a timely appeal.

---

[3] Rule 14-211(e) provides:

> After the hearing on the merits, if the court finds that the moving party has established that the lien or the lien instrument is invalid or that the plaintiff has no right to foreclose in the pending action, it shall grant the motion and, unless it finds good cause to the contrary, dismiss the foreclosure action. If the court finds otherwise, it shall deny the motion.

On June 23, 2006, Seyed and Sima Marvastian executed a deed of trust on property in Bethesda, Maryland in order to secure a $1,396,500 loan. Premier Mortgage Funding, Inc. was the lender. The Marvastians defaulted on the loan by failing to make payments when due in December 2012.

Ventures Trust by its trustee MCM Capital acquired the Marvastians' loan in February 2014. On October 20, 2014, the substitute trustees filed an order to docket, initiating the foreclosure process. At the time of filing, the substitute trustees alleged that the Marvastians owed $1,632,303.26 on the loan.

The Marvastians responded by filing a counterclaim, which was severed by order of the circuit court. They also filed a motion to dismiss or stay the foreclosure sale pursuant to Md. Rule 14-211. Following extensive briefing and a hearing, the court granted the Marvastians' motion to dismiss, albeit without prejudice. The judge's reasons for dismissing the case were exactly the same as those given for dismissing the foreclosure case that is the subject of Appeal No. 1524.

## I.

## STANDARD OF REVIEW

[B]efore a foreclosure sale takes place, the defaulting borrower may file a motion to stay the sale of the property and dismiss the foreclosure action. In other words, the borrower, may petition the court for injunctive relief, challenging the validity of the lien or . . . the right of the [lender] to foreclose in the pending action. The grant or denial of injunctive relief in a property foreclosure action lies generally within the sound discretion of the trial court. Accordingly, we review the circuit court's denial of a foreclosure injunction

for an abuse of discretion.  We review the trial court's legal conclusions de novo.

*Hobby v. Burson*, 222 Md. App. 1, 8 (2015) (internal citations and quotation marks omitted).  *See also Svrcek v. Rosenberg*, 203 Md. App. 705, 720 (2012).  In the two cases that are the subject of this appeal, the trial judges based their rulings on their legal conclusions.  Thus we review those conclusions de novo.

## II.

In *Finch v. LVNV Funding*, *LLC*, 212 Md. App. 748, 758-64 (2013) we stated that without a license, a collection agency has no authority to file suit against the debtor.  Accordingly, a "judgment entered in favor of an unlicensed debt collector constitutes a void judgment[.]" *Id.* at 764.  See also *Old Republic Insurance v. Gordon*, 228 Md. App. 1, 12-13 (2016) (footnote omitted).

Maryland Code B.R. § 7-101(c) defines a collection agency as follows:

> "Collection agency" means a <u>person who engages directly or indirectly</u> in the business of:
>     (1)(i) collecting for, or soliciting from another, a consumer claim; or
>       (ii) <u>collecting a consumer claim the person owns, if the claim was in default when the person acquired it</u>;
>     (2) collecting a consumer claim the person owns, using a name or other artifice that indicates that another party is attempting to collect the consumer claim;
>     (3) giving, selling, attempting to give or sell to another, or using, for collection of a consumer claim, a series or system of forms or letters that indicates directly or indirectly that a person other than the owner is asserting the consumer claim; or
>     (4) employing the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim.

(Emphasis added.)

5

As used in the Business Regulations Article, "person" means "an individual . . .

trustee . . . fiduciary, representative of any kind, partnership, firm, association, corporation,

or other entity." B.R. § 1-101(g). B.R. 7-101(e) defines a "consumer claim" as meaning

a "claim that: 1) is for money owed or said to be owed by a resident of the State; and 2)

arises from a transaction in which, for a family, household, or personal purpose, the

resident sought or got credit, money, personal property, real property, or services."

Before the law was amended in 2007, MCALA applied only to businesses that

collected debts owed to another person. *Old Republic*, 228 Md. App. at 16. In 2007, the

statute was broadened to include persons who engage in the business of "collecting a

consumer claim the person owns, if the claim was in default when the person acquired it[.]"

B.R. § 7-101(c)(1)(ii).

The legislative history of the 2007 amendment, insofar as here pertinent, was set

forth in *Old Republic* as follows:

> [T]he legislative history makes clear that the General Assembly enacted the
> 2007 amendments to regulate "debt purchasers," who were exploiting a
> loophole in the law to bypass the MCALA's licensing requirements.
>
> The Senate Finance Committee Report on House Bill 1324 explained:
>
> > House Bill 1324 extends the purview of the State Collection
> > Agency Licensing Board to include persons who collect
> > consumer claims acquired when the claims were in default.
> > These persons are known as "debt purchasers" since they
> > purchase delinquent consumer debt resulting from credit card
> > transactions and other bills; these persons then own the debt
> > and seek to collect from consumers like other collection
> > agencies who act on behalf of original creditors.

Charles T. Turnbaugh, Commissioner of Financial Regulation and Chairman of the Maryland Collection Agency Licensing Board offered the following testimony:

> [T]he evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws. Entities, such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement. The federal government has recognized and defined debt purchasers as collection agencies, and requires that these entities fully comply with the Federal Fair Debt Collection Practices Act.

> This legislation would include debt purchases within the definition of "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State. Other businesses that are collecting their own debt continue to be excluded from this law.

Susan Hayes, a member of the Maryland Collection Agency Licensing Board, submitted the following in support of the bill:

> The traditional method of dealing with distressed accounts has been for creditors to assign these accounts to a collection agency. These agencies, operating under a contingency fee arrangement with the creditor, keep a portion of the amount recovered and return the balance to the creditor. Today, a different option is available – selling accounts receivables to a third party debt collector at a discount.

> * * *

> HB 1324 closes a loophole in licensing of debt collectors under Maryland law. Just because a professional collector of defaulted debt "purchases" the debt, frequently on a contingent fee basis, should not exclude them from the licensing requirements of Maryland law concerning debt collectors.

7

*Id.* at 19-20.

Ventures Trust is in the business of buying from banks, at a discount, mortgages and deeds of trust that are in default. In the cases here at issue, there is no dispute that: 1) when Ventures Trust purchased the loans in question, the loans were in default; and 2) Ventures Trust, by filing (through its agents – the trustees) the foreclosure actions it was attempting to collect "consumer debt."

As we said in *Old Republic,* the legislative history of the 2007 amendments to the MCALA make it "clear that the General Assembly had a specific purpose in mind in adopting the 2007 amendments, i.e., including [under the Act] debt purchasers, people who purchased defaulted accounts receivable at a discount, within the purview of MCALA." *Id*. at 21. Money owed on a note secured by a deed of trust or a mortgage certainly qualifies as an account receivable. And Ventures Trust is in the business of buying up defaulted mortgages or deeds of trust and instituting foreclosure actions to obtain payment.

Appellants contend that the MCALA does not require a party to be licensed as a collection agency in order to file a foreclosure action. They support that contention with the following argument:

> Foreclosures are not mentioned [in B.R. § 7-101(c)], although the Legislature clearly knew how to do so if it had wished. There is no specific statement in the MCALA to the effect that "doing business" as a "collection agency" includes actions taken to enforce a security interest, such as foreclosing on a deed of trust, nor is there any specific statement that such actions would fall into the definition of "collecting" a consumer claim. Neither this Court nor the Court of Appeals has ever ruled that pursuing a foreclosure proceeding amounts to "doing business" in Maryland as a "collection agency" under the Act, and for good reason. As the Legislature has made clear in numerous

8

statutes, a foreign entity – including a statutory trust such as Ventures Trust – pursuing foreclosure is not "doing business" in Maryland[.]

Appellants emphasize that Md. Code (2014 Repl. Vol.), Corporations and Associations Article § 12-902(a) requires any foreign statutory trust doing business in Maryland to register with the State Department of Assessments and Taxation ("SDAT"). Section 12-908(a)(5) provides, however, that "[f]oreclosing mortgages and deeds of trust on property in this State" is not considered "doing business."

According to appellants, because of "the Legislature's" express decision to make clear that a foreclosure proceeding brought by a foreign statutory trust is by definition, not doing business in Maryland, a foreign trust does not need to be licensed as a collection agency to file a Maryland foreclosure action. That argument would be strong were it not for the fact (relied upon by both circuit court judges who ruled against appellants below) that section 12-908(a) of the Corporations and Associations Article expressly states that the "doing business" exception granted to foreign trusts is "for the purposes of this subtitle[.]" In other words, the foreign trust exception does not apply to the MCALA.

It is true, as appellants point out, that no Maryland appellate court has ever held that a foreign trust needs a license under the MCALA to file a foreclosure action. But the matter has simply not been addressed by any Maryland appellate court.

Judge Ellen Hollander, in *Ademiluyi v. PennyMac Mortgage Investment Trust Holdings I, LLC, et al.*, 929 F.Supp.2d 502, 520-24 (D. Md. 2013) did hold that a MCALA license was needed to bring a foreclosure action based on the allegations set forth in the complaint filed in that case. In *Ademiluyi*, the holder of the mortgage (PennyMac), filed a

foreclosure action on a mortgage even though (it was alleged) that PennyMac purchased the mortgage after it was in default and did not have a debt collection license. *Id*. at 520. The issue in that case was whether, based on the allegations in the complaint, PennyMac needed a license prior to bringing a foreclosure action. *Id.*

After a lengthy discussion, Judge Hollander said:

I am persuaded that, even if actions pertinent to mortgage foreclosure are taken in connection with enforcement of a security interest in real property, such actions may constitute debt collection activity under the MCALA. Therefore, based on the facts alleged by plaintiff, PennyMac Holdings may qualify as a collection agency under the MCALA with respect to mortgage debt it seeks to collect, including through judicial foreclosure proceedings or other conduct pertinent to foreclosure.

*Id.* at 523.

Support for Judge Hollander's conclusion can be found in a twenty-one page order, dated December 8, 2013, signed by Gordon M. Cooley, Chairperson of the Maryland State Collection Agency Licensing Board.[4] Mr. Cooley ordered several entities, including NPR Capital, LLC, to stop attempting to collect consumer debts by filing foreclosure actions. At page 17 of his order, the Acting Commissioner determined, *inter alia,* that NPR Capital violated the provisions of the MCALA (specifically B.R. § 7-401(a)) by attempting to collect a debt by filing a foreclosure action at a time when it was not licensed as a collection agency.

---

[4] Mr. Cooley also signed the order in his capacity as the Acting Director of Financial Regulation for Maryland.

When interpreting the MCALA, the ruling by Commissioner Cooley is of consequence because, as the Court of Appeals recently said, it is well established that appellate courts "should ordinarily give 'considerable weight' to 'an administrative agency's interpretation and application of the statute'" it is charged with administering. *Board of Liquor License Commissioners for Baltimore City v. Kougl*, 451 Md. 507, 514 (2017), (quoting *Maryland Aviation Administration v. Noland*, 386 Md. 556, 572 (2005)). As can be seen, the Board that administers the MCALA statute is of the view that the MCALA covers persons who attempt to collect consumer debt by filing a foreclosure action.

In support of their position, appellants point out, accurately, that nowhere in the legislative history of the 2007 amendment to the MCALA, is there any mention of foreclosure actions. From this, appellants ask us to infer that the General Assembly did not intend that persons who purchase defaulted mortgages or deeds of trust and then file foreclosure actions needed to purchase a debt collection license. In our view, the absence of a specific reference in the legislative history is not dispositive because, insofar as the issue here presented is concerned, the MCALA is unambiguous.

With exceptions not here relevant except the one discussed in Part III, *infra*, "a person must have a license whenever the person does business as a collection agency in the State." B.R. § 7-301(a). The definition of a "collection agency" has five elements. *Old Republic*, 228 Md. App. at 23 (Nazarian, J. dissenting). Those elements are:

11

"**[a]** a person who **[b]** engages directly or indirectly in the business of . . . collecting a **[c]** consumer claim the **[d]** person owns, **[e]** if the claim was in default when the person acquired it." BR § 7-101(c)(ii).

*Id*.

Ventures Trust admits that it meets elements (a), (c), (d) and (e). It argues, however, that element (b) is not met because it does not "engage in the business of collecting" debt by filing foreclosure actions. Boiled down to its essence, appellants' "not in the business" argument is based on the contention that the General Assembly intended to exempt from the MCALA persons who attempt to collect consumer debt by bringing foreclosure actions. We can find no such intent in the words of the statute or in anything in the Act's legislative history. We therefore reject that contention and hold that unless some exception to the MCALA is applicable, the licensing requirements of the MCALA applies to persons who attempt to collect a consumer debt by bringing a foreclosure action.

### III.

The MCALA states: "This title does not apply to . . . a trust company[.]" B.R. § 7-102(b)(8). The statute does not define "trust company." *See* B.R. § 7-101. Appellants claim that even if the MCALA licensing requirement applies to a person who brings a foreclosure action in order to enforce a consumer debt, the MCALA does not apply to Ventures Trust because it is a "trust company." Black's Law Dictionary (10th ed. 2014) defines "trust company" as "[a] company that acts as a trustee for people and entities and that sometimes also operates as a commercial bank." The appellants claim that Ventures

12

Trust meets that definition because, purportedly, Ventures Trust "certainly holds and maintains trust property."

We pause at this point to discuss what the record reveals about Ventures Trust. In appellants' filing with the Montgomery County Circuit Court, appellants' counsel stated that Ventures Trust is the holder of the notes at issue, and that it is a statutory trust formed in Delaware under 12 DEL. CODE § 3801(g). Ventures Trust has two trustees. They are MCM Capital and Wilmington Federal Savings Fund Society, FSB doing business as Christiana Trust. In Appeal No. 1525, counsel for the substitute trustees orally told the motions judge that Ventures Trust was "like an account at Christiana Bank" and that Christiana Trust was the trustee of Ventures Trust. That representation was also made by counsel for the substitute trustee in that case in a supplemental memorandum where it was said: "Ventures Trust. 2013-I-H-R…, is the holding of a Federal Savings Bank[,] which serves as its co-trustee…."

Using the Black's Law Dictionary (10th edition) definition of "trust company" set forth above, Ventures Trust does not fit within that definition. It does not act as a bank. Moreover, other entities act as trustees for it. There is nothing in the record that shows that Ventures Trust acts as a trustee for anyone.

Appellants also suggest that we use the slightly different definition of "trust company" set forth in Black's Law Dictionary (5th ed. 1979) because that edition of Black's was published "around the time of the 1977 amendment" that exempted trust companies from the MCALA. Black's 1979 definition of "trust company" was as follows: "a

13

corporation formed for the purpose of taking, accepting, and executing all such trusts as may be lawfully committed to it, and acting as testamentary trustee, executor, guardian, etc." There is no indication in the record that Ventures Trust is a corporation or, as already mentioned, that it acts as a trustee for anyone. Therefore, Ventures Trust does not meet that definition either.

The words "trust company" is defined in Md. Code (2011 Repl. Vol.), Financial Institutions Article ("Fin. Institutions") § 3-101(g) as meaning "an institution that is incorporated under the laws of this State as a trust company." But that definition only applies to matters set forth in the Fin. Institutions Article section 3-101(a). In Fin. Institutions §3-501(d), governing common trust funds, the term "trust companies" is defined as including a national banking association that has powers similar to those given to a trust company under the laws of "this State." That definition, however, only applies to subtitle 5 of the Financial Institutions Article. Md. Code (2011 Repl. Vol.), Estates and Trusts Article§ 1-101(v) also contains a definition of "Trust Company" but it applies only to laws governing the "estates of decedents." *See* Estates & Trusts Article § 1-101(a). Lastly, the term "statutory trust" is defined in Md. Code (2011 Repl. Vol.), Corporations and Associations Article § 12-101(h) as meaning: an unincorporated business, trust, or association:

> (i) Formed by filing an initial certificate of trust under § 12-204 of this title; and
> (ii) Governed by a governing instrument.
> (2) "Statutory trust" includes a trust formed under this title on or before May 31, 2010, as a business trust, as the term business trust was then defined in this title.

Ventures Trust admits that it does not fit within any of the above definitions of "trust company" or "statutory trust." Moreover, even if it did meet one or more of those definitions, there is no indication that the legislature, in 1977, when it exempted "trust companies" from the MCALA, intended those definitions to be used. As appellants concede, we are thus left with the general definition of "trust company" as set forth in Black's Law Dictionary. *See Ishola v. State*, 404 Md. 155, 161 (2008) (Dictionary definitions help clarify the plain meaning of a statute.).

The circuit court judge who dismissed the foreclosure action that is the subject of Appeal 1524 reached the following legal conclusion with which we are in complete accord:

> MCALA expressly limits the scope of its license requirement exemptions to those "... provided *in this title*...." Md. Code Ann., Bus. Reg. § 7-301(a) (emphasis added). MCALA does not explicitly exempt "foreign statutory trusts" that bring foreclosure actions from its licensing requirements. *See* Bus. Reg. § 7-102(b). In fact, the term "foreign statutory trust" never appears in MCALA. *See* Bus. Reg. § 7-101, *et seq*. Thus, the General Assembly expressed a clear intent to subject foreign statutory trusts that bring foreclosure actions in Maryland, like Ventures Trust, to MCALA's licensing requirements.

## CONCLUSION

A debt purchaser that attempts to collect a consumer debt by bringing a foreclosure action is required to have a license unless some statutory exemption applies. Contrary to appellants' contention, Ventures Trust is not a "trust company" within the meaning of the MCALA and must therefore obtain a debt collection license in accordance with the provisions of the MCALA before bringing a foreclosure action. Because Ventures Trust

15

had no such license, it was barred from filing, through its agents, the two foreclosure actions here at issue.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**